# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-040

Filing Date: June 26, 2009

Docket No. 31,367

**REYMOND P. MARQUEZ**,

   **Petitioner,**

v.

**TIMOTHY HATCH, Warden**,

   **Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Douglas R. Driggers, District Judge**

Hugh Dangler, Chief Public Defender
Marc A. Gordon, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**PER CURIAM.**

**{1}** Petitioner seeks review of the district court's summary dismissal of his petition for a writ of habeas corpus. *See* Rule 12-501(A) NMRA (governing the procedure for "petitions for the issuance of writs of certiorari seeking review of denials of habeas corpus petitions by the district court pursuant to Rule 5-802 [NMRA] of the Rules of Criminal Procedure."). We limit our review to Petitioner's claim that his no contest plea was not knowingly and intelligently made because the district court incorrectly informed Petitioner at the time of his plea regarding the maximum possible sentence he faced. For the following reasons, we conclude that the district court should have held an evidentiary hearing to fully develop the record necessary to resolve Petitioner's claim. We therefore reverse and remand

to the district court with instructions to appoint counsel for Petitioner and hold an evidentiary hearing to further consider the third ground for relief in Petitioner's habeas petition.

**PROCEDURAL BACKGROUND**

**{2}**     Petitioner entered a no contest plea to one count of trafficking cocaine and one count of tampering with evidence.  Regarding the trafficking charge, during the plea colloquy at the time of the taking of the plea, the district court informed Petitioner that the trafficking charge would be "a second-degree felony with a basic sentence of 9 years in prison."  The court also told Petitioner that "if the State finds any prior felony convictions for you and proves that you are that same person, that they can then file paperwork which would add mandatory time to your sentence."  The written record of the no contest plea proceeding also confirms that the court informed Petitioner that the trafficking offense was a second-degree felony with a maximum basic sentence of nine years.  Although the document also indicates that the district court informed Petitioner that any basic sentence could be enhanced if Petitioner had any undisclosed prior felony convictions, the document specifically cites to the habitual offender statute but not the enhancement portion of the trafficking statute. *Compare* NMSA 1978, § 31-18-17 (2003) (setting forth the habitual offender enhancements that shall be added to the basic sentence of noncapital felonies, which cannot be suspended or deferred) *with* NMSA 1978, § 30-31-20(B)(2) (2006) (providing that anyone who commits a second or subsequent trafficking offense is guilty of a first-degree felony and shall be sentenced pursuant to NMSA 1978, § 31-18-15 (2007), which carries a basic sentence of imprisonment of eighteen years).

**{3}**     After Petitioner's initial plea, the State filed a supplemental criminal information alleging that Petitioner had three prior felony convictions, two of which were prior trafficking offenses.  At the beginning of the sentencing hearing, defense counsel informed the court that he "reviewed the supplemental criminal information with Mr. Marquez.  We understand the priors set forth and enhancements that would apply."  Petitioner subsequently confirmed that he reviewed the supplemental information and then pled no contest to the allegations that he had three prior felony convictions, two of which were prior trafficking convictions.  The supplemental information itself is not part of the record before this Court.  Nonetheless, before Petitioner entered a no contest plea to the prior convictions alleged in the supplemental information, there was no mention on the record that Petitioner could be sentenced to an eighteen-year basic sentence for his trafficking conviction because of his prior convictions.

**{4}**     Immediately after Petitioner's no contest plea to the prior convictions, the discussion between the trial judge, defense counsel, and the prosecutor turned to how many of the prior convictions could be used for enhancement purposes under the habitual offender statute.  Although defense counsel and the prosecutor disagreed about whether the trafficking conviction could be enhanced by one or four years under the habitual offender statute, the following exchanges during the sentencing hearing suggest that everyone seemed to assume that the trafficking conviction would be treated as a first-degree felony with an eighteen-year

2

sentence, regardless of what other enhancements might apply under the habitual offender statute.

Judge: Pursuant to the discussions between the attorneys, I am going to take your no contest plea and as an admission that you are the same person that has committed these prior felonies and that they were done in the appropriate manner and find that you are a habitual offender and your sentence should be enhanced four years per felony count and that's because B and C occurred on the same day so for purposes of the habitual offender act you have two prior felony convictions and that's why it's four years.

Defense counsel: Judge, we would admit, on number 4, we would admit, we would admit, we would not stipulate, we would agree that the four-year habitual would apply to the tampering charge only or that is going to be our argument because the first-degree, the trafficking charge, Count 1, is going to be enhanced under Paragraph 4, so it's going to be our argument that the four-year habitual only applies to Count 2.

Judge: What says the State?

Prosecutor: Your honor, the trafficking conviction is enhanced to a first-degree felony with eighteen mandatory years because he has a prior trafficking conviction, actually he has two prior trafficking convictions. We believe that in using the trafficking conviction in Paragraph C to enhance Count 1 to a first-degree felony, we can still use the felonies and priors in Paragraph A and B to further enhance Count 1 to four additional years under the habitual offender statute. And then as the court said Count 2 would be enhanced fours years for habitual offender. I believe there's no argument about [that], no disagreement.

\* \* \*

Judge: Okay, if we have as we have in this case more than one prior trafficking conviction, Mr. Lilley [defense counsel], you're saying that because [the trafficking statute] says "second and subsequent" [offenses, it] raises the level to a first-degree that that prohibits the use of the habitual offender statute as to

3

those specific prior felony convictions.

| | |
|---|---|
| Defense counsel: | Yes, I am judge. That he is already facing an enhancement because of priors and this is a specific enhancement statute which is going to trump regardless of what other convictions he has is going to trump any other habitual time added to that. |
| Judge: | And the sentence goes from a second-degree, which is nine years, to a first-degree which is eighteen years and it's mandatory. |
| Prosecutor: | Yes. |
| Judge: | I think you're right. |

**{5}** As revealed in the foregoing exchange, the record does not disclose any expressions of confusion or concern by Petitioner about the mention of an eighteen-year basic sentence on the trafficking conviction at the time of his sentencing. That said, we also reiterate that there was no mention on the record of treating the trafficking offense as a first-degree felony with a basic sentence of eighteen years until after Petitioner had already pled to the trafficking offense itself and to the prior trafficking convictions that were ultimately used to enhance the current trafficking conviction to a first-degree felony. With this background in mind, we proceed to consider whether the district court should have held an evidentiary hearing to investigate whether Petitioner's plea was voluntarily, knowingly, and intelligently made.

**DISCUSSION**

**{6}** The failure to accurately inform a defendant of his sentencing exposure may render a plea involuntary. *See State v. Garcia*, 1996-NMSC-013, 121 N.M. 544, 549, 915 P.2d 300, 305 ("Failure to advise a defendant of the potential penalties presumptively affects defendant's substantial rights and renders the plea unknowing and involuntary."); *accord State v. Jonathan B.*, 1998-NMSC-003, ¶ 17, 124 N.M. 620, 954 P.2d 52. Ideally, the sentencing information should come from the judge, but the plea nevertheless may be knowingly, voluntarily, and intelligently made if the defendant is aware of the correct information from other sources. *See Garcia*, 121 N.M. at 549, 915 P.2d at 305 (recognizing that the better practice is for the court to inform the defendant directly, but holding that "provided the record shows the defendant had the requisite information, the court need not be the only source of that information."). Regardless of the source of the information, however, the key consideration is whether the defendant has full and correct information at the time of the plea. *Id.* at 548, 915 P.2d at 304 ("[T]he critical event is the taking of the plea. Rule 5-303(E) [NMRA] clearly contemplates the court advise the defendant at that time and *prior to accepting the plea.*"). In this regard, there must be a showing on the record that

4

the plea was voluntarily, knowingly, and intelligently made. *Id.* (requiring the court to "ensure a showing *on the record* that the defendant had the necessary information.").

**{7}** To that end, our Rules of Criminal Procedure provide that:

> The court shall not accept a plea of guilty, no contest or guilty but mentally ill without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands . . . *the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law* for the offense to which the plea is offered[.]

*See* Rule 5-303(F)(2) (emphasis added). Although the district court must also advise the defendant of the potential for adverse effects on his or her immigration status and must inquire whether defense counsel has advised the defendant about possible limitations on the defendant's constitutional right to bear arms and possible sex offender registration requirements, Rule 5-303(F)(5)-(7), the rule does not expressly state whether possible sentence enhancements must be explained to the defendant before a plea is accepted. However, as noted above, the rule does require the court to inform the defendant, and ensure the defendant's understanding, regarding any mandatory minimum and maximum possible penalties provided by law. Rule 5-303(F)(2). The question posed by this case is whether the court's obligation to explain the mandatory minimum and maximum possible penalties to the defendant includes advice about sentence enhancements that could result if the defendant has prior convictions.

**{8}** In general terms, when taking a plea, the district court "only has a duty to ensure that the defendant understands the 'direct' consequences of the plea but is under no duty to advise the defendant of the plea's 'collateral' consequences." *State v. Paredez*, 2004-NMSC-036, ¶ 9, 136 N.M. 533, 101 P.3d 799. The direct consequences of a plea are generally viewed as those that have "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4ᵗʰ Cir. 1973); *accord State v. Moore*, 2004-NMCA-035, ¶ 21, 135 N.M. 210, 86 P.3d 635 (noting the general rule "that the court need only advise a defendant of direct consequences of a plea, that is, consequences that are punitive or that otherwise have a definite, immediate, and largely automatic effect on the range of a defendant's punishment").

**{9}** In other jurisdictions, sentence enhancements based on a defendant's prior convictions are generally regarded as a consequence of which the defendant must be advised before pleading guilty. *See United States v. Castro-Gómez*, 233 F.3d 684, 687-88 (1ˢᵗ Cir. 2000) (ruling that the failure to accurately inform the defendant that a life sentence was mandatory because of his prior convictions rendered the plea invalid); *United States v. Hairston*, 522 F.3d 336, 341 (4ᵗʰ Cir. 2008) (concluding that the district court erred by failing to inform the defendant before accepting his plea that he would face an enhanced statutory

5

minimum sentence if he had qualifying prior convictions); *Carter v. State*, 812 So. 2d 391, 394 (Ala. Crim. App. 2001) (recognizing that a defendant must be advised of any applicable habitual offender enhancements); *Ashley v. State*, 614 So. 2d 486, 489 (Fla. 1993) (requiring the court to ascertain prior to accepting a plea that "the defendant is aware of the possibility and reasonable consequences of habitualization."); *State v. Melone*, 2 P.3d 233, 236-37 (Mont. 2000) (recognizing that the court must advise a defendant of the maximum penalty, including any persistent felony offender enhancements that might apply); *Hudson v. Warden, Nevada State Prison*, 22 P.3d 1154, 1162 (Nev. 2001) (recognizing that a discrepancy regarding information the defendant was given regarding sentence enhancements for prior convictions rendered the plea invalid); *see also* 5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 21.4(d), at 820-21 (3d ed. 2007) (discussing the desirability of "a warning to the defendant of the fact, where the law so provides, that the sentencing provisions of the statute under which he is charged or a more general multiple offender statute provides for specified higher penalties if the instant offense puts the defendant into the repeater category." (footnote omitted)); ABA Standards for Criminal Justice, Pleas of Guilty § 14-1.4(a)(iii) (3d ed. 1999); *cf. United States v. Santo*, 225 F.3d 92, 101 (1st Cir. 2000) (holding that the defendant must be allowed to withdraw his guilty plea because the district court gave erroneous information about the mandatory minimum sentence ultimately imposed based on the quantity of drugs involved); *State v. Corbin*, 751 N.E.2d 505, 509-10 (Ohio Ct. App. 2001) (invalidating a plea to drug trafficking because the defendant was not correctly informed of the degree of felony and applicable sentencing range based on the type and quantity of cocaine involved).

**{10}** As noted above, at the time of the initial plea, the district court advised Petitioner about the possibility of an enhancement under the habitual offender statute. However, there is no indication in the record that the district court specifically referred to a potential enhancement under the trafficking statute or that Petitioner was told the trafficking charge could be treated as a first-degree felony with a basic sentence of eighteen years. This is important because the enhancement that occurs under the trafficking statute is fundamentally different than an enhancement under the habitual offender statute in that the trafficking conviction itself is raised from a second-degree felony to a first-degree felony if the defendant has one or more prior trafficking convictions, and the basic sentence is therefore increased from nine to eighteen years. *See* § 30-31-20(B)(2). As with other basic sentences imposed under the provisions of Section 31-18-15, the basic sentence for a second-degree trafficking conviction can be suspended or deferred in whole or in part but not for a first-degree trafficking conviction. *See* NMSA 1978, § 31-20-3 (1985). By contrast, regardless of the level of noncapital felony, a habitual offender enhancement simply adds a varying number of years to the underlying basic sentence, depending on the number of prior convictions, and those additional years cannot be suspended or deferred. *See* § 31-18-17.

**{11}** Based on the record before us in this case, the most we can say is that Petitioner was aware at the time of his plea that he faced a nine-year sentence on the trafficking charge and an unspecified number of additional years of habitual offender enhancement. Assuming Petitioner inferred from the district court's advice that his three prior felony convictions

might be used to enhance the trafficking sentence, and assuming Petitioner was aware that three prior felony convictions might lead to an eight-year habitual offender enhancement under Section 31-18-17, Petitioner might arguably conclude that he could receive a maximum sentence on the trafficking charge of seventeen years by pleading no contest. Instead, Petitioner was actually given a basic sentence of eighteen years on the trafficking charge. That sentence was enhanced by one year because the district court concluded that Petitioner's two prior trafficking convictions could not be used to both raise the trafficking offense to a first-degree felony and to impose an added habitual offender enhancement. Thus, at the very least, the deficient information that Petitioner was given at the time of his plea could have caused him to believe he was pleading to a maximum sentence on that charge of seventeen years, rather than the actual maximum that was possible (and ultimately imposed) of nineteen years.

**{12}** We recognize that prior cases hold that a defendant does not need to be advised at the time of a plea that the current conviction could be used as a prior conviction in a later habitual offender proceeding if the defendant commits another crime in the future. *See State v. House*, 1998-NMCA-018, ¶ 69, 124 N.M. 564, 953 P.2d 737 (holding that the lower court did not have to explain to the defendant that by entering a plea he could be subjected to enhanced sentences for future DWI-related offenses, and stating that "a defendant need not be informed of all collateral consequences to pleading guilty to make the guilty plea knowing, intelligent, and voluntary."), *rev'd on other grounds*, 1999-NMSC-014, ¶ 104, 127 N.M. 151, 978 P.2d 967; *see also State v. Miranda*, 100 N.M. 690, 693, 675 P.2d 422, 425 (Ct. App. 1983) (holding that the potential use of a plea made in one proceeding is a collateral consequence in a subsequent habitual offender proceeding because "there exists a right to assume that defendants will not be guilty of a subsequent offense but will be law-abiding persons in the future."). Our decision today does not alter these principles. However, when a defendant's plea will most certainly result in an immediate sentence enhancement because of the defendant's prior convictions, the district court must advise the defendant of such likelihood before accepting the plea. Without a full understanding of the likely direct sentencing consequences resulting from a plea, a defendant cannot truly make a voluntary, knowing, and intelligent decision to waive the right to a trial and its attendant protections. *See Garcia*, 121 N.M. at 548, 915 P.2d at 304 ("[T]he critical event is the taking of the plea. Rule 5-303(E) clearly contemplates the court advise the defendant at that time and *prior to accepting the plea*.").

**{13}** We realize that it may be difficult for the district court to accurately inform a defendant of potential sentence enhancements before the existence and validity of the defendant's prior convictions have been established through a supplemental information proceeding. *See Santo*, 225 F.3d at 98 (recognizing the difficulty of advising a defendant of potential sentence enhancements that are based on facts not yet determined). Such difficulties are not insurmountable and do not relieve the court of its obligation to adequately inform the defendant of sentencing enhancements based on prior convictions that will almost certainly result from a guilty or no contest plea. *See Hairston*, 522 F.3d at 340 (noting that even though the district court may not be certain at the time of a plea whether a defendant

7

qualifies as an armed career criminal for sentence enhancement purposes, the court should nonetheless anticipate and explain the sentence that would be applicable if the defendant has prior qualifying convictions). Certainly, if the district court is aware of the defendant's prior convictions that would require a sentence enhancement if subsequently requested by the State, the court should inform the defendant of the maximum potential sentence, including enhancements. If the defendant enters a guilty or no contest plea without being advised of possible sentence enhancements and then the possible existence of prior convictions comes to light when the State files a subsequent supplemental information seeking to enhance the defendant's sentence based on those prior convictions, the court should conduct a supplemental plea proceeding to advise the defendant of the likely sentencing enhancements that will result, and determine whether the defendant wants to withdraw the plea in light of the new sentencing enhancement information.

**{14}** Although the district court did make an effort to alert Petitioner to the possibility that his sentence could be enhanced if he had prior convictions, the record before us indicates that Defendant was not given an assessment of the length of the enhancement. *See State v. Montler*, 85 N.M. 60, 61-62, 509 P.2d 252, 253-54 (1973) (recognizing the importance of informing the accused of the maximum sentence he might face, but nevertheless upholding a guilty plea where the information from the court was vague and slightly misleading, but where the defendant nevertheless was put on notice that he "could be imprisoned for a long, long time."). Most troubling, the information provided by the district court focused on the possibility of enhancements under our habitual offender statute, and never specifically mentioned the additional enhancement that was likely to result under our trafficking statute.

**{15}** In light of the foregoing, we conclude that the district court did not adequately and accurately inform Petitioner of the possible sentencing enhancements he faced by pleading no contest. However, because Petitioner failed to move to withdraw his guilty plea in the district court or challenge the validity of his plea in his direct appeal, he must demonstrate that the error was fundamental. *See State v. Sutphin*, 2007-NMSC-045, ¶ 10, 142 N.M. 191, 164 P.3d 72 (noting that because "the facts underlying Petitioner's habeas claim were known or knowable to him at the time of his trial, and the record was adequate to address the issue on direct appeal . . . review is only for fundamental error")*; Campos v. Bravo*, 2007-NMSC-021, ¶ 8, 141 N.M. 801, 161 P.3d 846 (reviewing the defendant's habeas claim for fundamental error because it was not raised in the defendant's direct appeal); *State v. Dominguez*, 2007-NMSC-060, ¶ 14, 142 N.M. 811, 171 P.3d 750 (holding that the defendant failed to preserve his objection to his guilty plea because he failed to move to withdraw his plea). To show fundamental error regarding a guilty or no contest plea, "'(1) the error must be clear, and (2) the error must clearly have affected the outcome.'" *State v. Pacheco*, 2008-NMCA-059, ¶ 12, 144 N.M. 61, 183 P.3d 946 (quoting *State v. Bencomo*, 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct. App. 1990)). For the reasons discussed above, it is clear to us that the sentencing court erred in advising Petitioner at the time of the plea that the trafficking charge would be treated as a second-degree felony with a maximum basic sentence of nine years. What is not clear is whether the deficiency in the court's advice affected Petitioner's decision to plead no contest.

**{16}** As previously discussed, Petitioner's attorney may have counseled his client about the different sentences defendant faced prior to Petitioner entering his plea. Indeed, there is a suggestion that Petitioner's counsel advised Petitioner that his plea would result in the offense being treated as a first-degree felony with a potential eighteen-year sentence. Without speculating about the advice Petitioner's counsel may have given regarding the applicable sentencing enhancement scenarios, and without speculating on the effect of that advice in the face of vague and contradictory advice from the trial judge, we cannot determine exactly what Petitioner understood at the time of his plea. Under these circumstances, we therefore agree with Petitioner's central contention that the district court erred in summarily denying his petition without holding an evidentiary hearing to determine exactly what counsel told Petitioner and what Petitioner understood at the time of his initial plea or subsequent admissions at the sentencing hearing. *See Roman v. State*, 81 N.M. 477, 478, 468 P.2d 878, 879 (Ct. App. 1970) ("Unless the motion and the files and records of the case conclusively show the prisoner is not entitled to relief, the prisoner is to be accorded an evidentiary hearing on his motion."); *State v. Guy*, 79 N.M. 128, 131, 440 P.2d 803, 806 (Ct. App. 1968) (recognizing that documents that are not a part of the files and records of the original proceeding cannot serve as a basis for denying a petitioner an evidentiary hearing on his habeas corpus petition). We also note that the judge who accepted Petitioner's plea was not the same judge who ruled on his habeas petition. Therefore, the habeas corpus judge could not rely on his or her own personal knowledge of the plea proceedings in weighing the merits of Petitioner's contentions. *See State v. Guerro*, 1999-NMCA-026, ¶ 26, 126 N.M. 699, 974 P.2d 669 (recognizing that the refusal to hold an evidentiary hearing in post-conviction proceedings may be justified if the petitioner's grounds for relief are contradicted by occurrences in the record or the judge's own personal knowledge).

**CONCLUSION**

**{17}** Accordingly, we reverse the district court's order summarily dismissing Petitioner's habeas corpus petition and remand for a hearing in accordance with Rule 5-802. In anticipation of that hearing, the district court shall appoint counsel to represent Petitioner.

**{18}** **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _Marquez v. Hatch_, No. 31,367**

| AE | APPEAL AND ERROR |
|---|---|
| AE-FE | Fundamental Error |
| AE-SR | Standard of Review |

| CT | CONSTITUTIONAL LAW |
|---|---|
| CT-WR | Waiver of Rights |

| CA | CRIMINAL PROCEDURE |
|---|---|
| CA-ES | Enhancement of Sentence |
| CA-NP | Nolo Contendere Plea |
| CA-PP | Plea and Plea Bargaining |
| CA-PC | Prior Convictions |
| CA-WV | Waiver of Rights |
| CA-WH | Writ of Habeas Corpus |

| RE | REMEDIES |
|---|---|
| RE-WH | Writ of Habeas Corpus |