# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>August 4, 2016</u>

**NO. 33,940**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**KENNETH EUGENE GRAY,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**_____ OPINION**

**SUTIN, Judge.**

{1}    This appeal involves Defendant Kenneth Gray's criminal liability under NMSA 1978, Section 66-8-101(C) (2004, amended 2016) (current version at Section 66-8-101(E)), for a third degree felony of driving while intoxicated (DWI) causing great bodily harm to a human being. The human being was Defendant. The appeal also involves a sixteen-year enhancement to a three-year basic sentence. The enhancement was based on four prior DWI convictions. Defendant questions the applicability of the liability and sentencing provisions of Section 66-8-101, and the failures of his counsel and the district court to advise him at the plea stage of the enhancement.

{2}    We hold that Section 66-8-101(C) does not apply to Defendant, the perpetrator, where the great bodily injury resulting from his unlawful conduct was to himself and not to others. Although this holding requires reversal and vacation of the judgment and sentence associated with Defendant's plea, we choose also to discuss the sentencing statute, Section 66-8-101(D) (current version at Section 66-8-101(F)), under which Defendant was sentenced, and we hold that Defendant was improperly sentenced. Further, we take this opportunity to once again remind lower courts and defense counsel of their obligations in plea circumstances.

**BACKGROUND**

{3}    When the arresting officer responded to a report of a possible drunk driver, he found Defendant sitting in the right front seat of a truck that had collided with another vehicle. Defendant was bleeding from his face and head, holding his chest and head, and appeared to be in great pain, and the steering wheel was severely bent inward. Two persons in the other vehicle were also injured, but the injuries to these victims were not the subject of the charge under Section 66-8-101(C) to which Defendant pleaded guilty.[1] Based on clear evidence of DWI, Defendant was charged with violating Section 66-8-101(B) and (D) and, in a written plea and disposition agreement, pleaded guilty to Section 66-8-101(B) based on having committed great bodily harm to himself in the collision.[2] Defendant was also charged with DWI fourth or subsequent offense, a fourth degree felony, contrary to NMSA 1978, Section 66-8-

---

[1] In a plea-related hearing, the district court noted that the original charge against Defendant stated that two named victims had suffered great bodily harm. The prosecution told the court that those victims' injuries did not rise to the level of great bodily harm. The original charge was amended to reflect that it was Defendant's injuries that amounted to great bodily harm.

[2] During the plea hearing, the district court asked Defendant for his plea to Count 1, "great bodily harm by vehicle, driving while under the influence of intoxicating liquor or any drug," as described in Section 66-8-101(C). At this hearing, Defendant initially pleaded no contest. The State noted that the plea and disposition agreement called for Defendant to plead guilty. The court asked Defendant again for his plea to Counts 1 and 4, and Defendant pleaded guilty. The court's judgment marked the "no contest" box.

102(D)(2), (G) (2010, amended 2016). Defendant's plea agreement recites that a DWI charge under Section 66-8-102(A), a special fourth degree felony, "will be dismissed."

{4} Section 66-8-101(C), the provision to which Defendant pleaded guilty during his plea hearing, reads:

> A person who commits . . . great bodily harm by vehicle while under the influence of intoxicating liquor . . . is guilty of a third degree felony and shall be sentenced pursuant to the provisions of [NMSA 1978,] Section 31-18-15 [(2007, amended 2016).]

"Great bodily harm by vehicle" is defined in Section 66-8-101(B) as "the injuring of a human being, to the extent defined in [NMSA 1978,] Section 30-1-12 [(1963)], in the unlawful operation of a motor vehicle." Section 30-1-12(A) defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body[.]"

{5} For a Section 66-8-101(C) third degree felony, the basic sentence as set out in Section 31-18-15(A)(9) (current version at Section 31-18-15(A)(11)) is three years imprisonment. Section 66-8-101(D) provides enhancements to the basic sentence as follows:

> A person who commits . . . great bodily harm by vehicle while under the influence of intoxicating liquor . . . as provided in Subsection C of this section, and who has incurred a prior DWI conviction within ten years

3

of the occurrence for which he is being sentenced under this section shall have his basic sentence increased by four years for each prior DWI conviction.

{6} Defendant does not dispute that he admitted in his plea agreement and at the plea hearing that he drove under the influence of alcohol causing the collision. Further, in pleading to a violation of Section 66-8-101(C), he necessarily admitted that his injuries rose to the level of great bodily harm under Section 66-8-101(B) and (C). And he admitted that he had four prior DWI convictions dated in 1987, 1996, 2006, and 2008. At sentencing, the prosecution argued that under Section 66-8-101(D) and (E) the four prior DWI convictions should add four four-year enhancements to Defendant's basic three-year sentence, totaling nineteen years. The district court agreed.

{7} The circumstances underlying the plea and sentencing concerns are telling. After first using the injuries of others to charge Defendant in magistrate court, in district court, the State switched to Defendant's own injuries—a ruptured aorta valve and a dislocated hip—as the factual basis to support the charge and the plea. The crime required that "a human being" suffer great bodily harm. *See* § 66-8-101(B). Although not made a point of error on appeal, throughout the proceedings defense counsel did not argue and Defendant was unaware that the statute's wording, "the

injuring of a human being," could be viewed as unclear.[3] Defendant contends on appeal that the statute is, indeed, unclear and must be interpreted to exclude the perpetrator within the intended coverage of "human being," and therefore, the crime to which Defendant pleaded guilty was nonexistent, requiring vacation of his conviction.

{8} Further, it is undisputed that Defendant was not informed by his counsel, the prosecution, or the district court that his having admitted in his plea and disposition agreement to the existence of four prior DWI convictions would trigger enhancement of his basic three-year sentence and how much additional prison time he would face. The plea and disposition agreement stated only that the maximum penalties for the charge were "[third] degree felony—3 years/$5,000 fine[.]" At the plea point in time, Defendant had been informed only that he would receive a three-year basic sentence

---

[3] Interestingly, at the plea hearing, the district court appeared somewhat skeptical as to whether the statute meant great bodily harm to Defendant. The discussion was:

Court:   Who had the great bodily harm, him?

State:   It was actually, him, Your Honor.

Court:   Even if it's your own self, huh?

State:   I didn't find anything to indicate that I could not charge it that way.

for the DWI offense. Before he was sentenced, a pre-sentence report recommended that Defendant's total prison time for the DWI third degree felony be three years followed by two years parole.

{9} At sentencing, the prosecution argued for enhancement of Defendant's basic three-year sentence by sixteen additional years. It was clear that two of the four prior convictions occurred outside of the ten-year limitation in Section 66-8-101(D). While defense counsel argued that only two of the four prior DWI convictions should be considered in sentencing, that the statute was ambiguous, and that the rule of lenity should apply, there is no indication that defense counsel or the district court discussed with Defendant whether he might want to consider withdrawing his plea, when the district court interpreted the statute to include all four of the prior convictions and sentenced Defendant to nineteen years.

{10} Finally, along the same lines, at sentencing the prosecution argued that two persons, in addition to Defendant, were severely injured in the collision. The district court believed that to be so, and as a result, designated the crime as a serious violent offense under the Earned Meritorious Deductions Act, NMSA 1978, § 33-2-34 (2006, amended 2015), thereby substantially limiting Defendant's good time credit. Defense counsel did not argue against that determination.

{11}    Based on the underlying circumstances, Defendant asserts the following six points on appeal: (1) Defendant should be allowed to withdraw his plea because the plea was based on a nonexistent crime; (2) this Court should reverse and remand to enforce the plea agreement pursuant to Defendant's reasonable understanding of that agreement; (3) alternatively, the district court's failure to inform Defendant of the possible sentencing enhancements he faced by pleading guilty renders the plea involuntary; (4) as a second alternative, because the record establishes a prima facie case of ineffective assistance of counsel, this Court should reverse to allow Defendant to withdraw his plea; (5) the sixteen-year enhancement was erroneous; and (6) the district court's misunderstanding of the factual basis of the plea led to sentencing errors requiring reversal. Defendant asks this Court to "vacate his conviction[ to] allow him to withdraw his plea[] or grant him a new sentencing."

**DISCUSSION**

**The Dispositive Issue of Application of "Human Being" to the Perpetrator**

{12}    Defendant asserts that Section 66-8-101(C) is inapplicable to his conduct, and as such, he was charged with and convicted of a "nonexistent crime." Pursuant to statutory construction, we review de novo whether a statute is correctly applied to a person's conduct. *See State v. Office of the Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622.

7

{13} The State sets out various arguments to persuade us that the Legislature intended "a human being" in Section 66-8-101(C) to include the perpetrator. First, is the State's plain-language argument that nothing in the text of the statute limits the crime to injuries inflicted on others and that we are not to read new language into a statute. Along the same lines, the State argues that the Legislature knows how to limit the scope of a crime when it means to, has not limited the scope here, and has enacted statutes that explicitly apply only when the perpetrator harms another person. *See* NMSA 1978, § 66-8-101.1(A) (1985) (regarding injury to a pregnant woman by vehicle); NMSA 1978, § 30-3-5(A) (1969) ("Aggravated battery consists of the unlawful touching or application of force to the person of another[.]"); NMSA 1978, § 30-15-1 (1963) ("Criminal damage to property consists of intentionally damaging . . . property of another[.]"); NMSA 1978, § 30-9-12(A) (1993) ("Criminal sexual contact is the unlawful and intentional touching of or application of force . . . to the . . . intimate parts of another[.]"); NMSA 1978, § 30-17-5(A)(3) (2006) ("Arson consists of a person maliciously or willfully starting a fire . . . with the purpose of destroying or damaging . . . the property of another[.]"). The State's point is that the Legislature deliberately chose not to use the word "another" in Section 66-8-101(B).

{14} Section 66-8-101.1(A) relates specifically to injury by vehicle that criminalizes injury to a pregnant woman. Section 66-8-101.1(A) states that "[i]njury to pregnant

8

woman by vehicle is injury to a pregnant woman by a person other than the woman in the unlawful operation of a motor vehicle causing her to suffer a miscarriage or stillbirth as a result of that injury." Under Section 66-8-101.1(C), a perpetrator who causes such injury while under the influence of intoxicating liquor is guilty of a third degree felony. As highlighted by the State, Section 66-8-101.1(A) does not criminalize the act of an intoxicated driver who is pregnant and who causes herself to suffer a miscarriage or stillbirth.

{15}    Second, is a policy argument. The State argues that the Legislature could rationally have concluded that it was appropriate to punish the creation of the severe risk because the harm "imposes costs on society greater than the run-of-the-mill DWI." And third, the State argues that the statute is not ambiguous, and therefore, lenity does not demand a result in Defendant's favor.

{16}    The State's arguments, while reasonable, are not persuasive. We see no unstated or implicit intention under the Criminal and Motor Vehicle Codes that a DWI driver is to be considered the victim and imprisoned for having committed great bodily harm to himself.

{17}    The social evil of DWI is rationally related to the monstrous consequences that occur when the perpetrator kills or harms others, whether they are pedestrians, passengers, or persons in other vehicles. *See State v. Roper*, 1996-NMCA-073, ¶ 17,

9

122 N.M. 126, 921 P.2d 322 (stating that DWI has a "great potential for serious injury or death" and that the act of DWI "represents a reckless and inexcusable disregard for the rights of other members of the [traveling] public" (internal quotation marks and citation omitted)); *see also* § 66-8-101.1(A) (indicating an intent that the pregnant driver is not considered a victim or to be imprisoned for having injured herself). Extending our social policy as embodied in criminal law to persons who harm themselves while driving while intoxicated should be made clear through carefully worded statutory language. We do not agree that monetary costs and possible traffic delays or closures support a social policy that in turn supports the interpretation that Section 66-8-101(B) embodies our Legislature's intent to imprison a DWI perpetrator who causes harm to himself. We construe Section 66-8-101(C) as applying only when a driver while under the influence of an intoxicant has caused great bodily harm to another human being.

**Validity of Sixteen-Year Enhancement Issue**

{18}      Because the issue of whether, under Section 66-8-101(D), prior DWI convictions outside of the ten-year period will enhance a defendant's basic sentence for a Section 66-8-101(C) conviction will likely arise in a future case, we will address the issue here. Defendant asserts that, as a matter of law, the district court lacked statutory authority to enhance his sentence by sixteen years. Defendant shows and the

10

State does not dispute that only two of the four prior convictions occurred within the ten-year period preceding his present conviction. Defendant argues that the district court could lawfully impose only two four-year enhancements. Defendant adds that, at the very least, we should determine that Section 66-8-101(D) is ambiguous and hold that the rule of lenity requires resolution of the issue in his favor. Our review is de novo when we engage in statutory construction. *See, e.g.*, *State v. Telles*, 1999-NMCA-013, ¶ 21, 126 N.M. 593, 973 P.2d 845.

{19}    We agree with Defendant. The language of the statute at issue is that the perpetrator "who has incurred *a* prior DWI conviction within ten years of the occurrence for which he is being sentenced . . . shall have his basic sentence increased by four years for *each* prior DWI conviction." Section 66-8-101(D) (2004) (emphasis added). We interpret the existence of "*a* prior DWI conviction within ten years" to allow an enhancement for *each such* conviction within that ten-year period. Thus, the enhancement can be added only for those prior convictions occurring within the ten-year period. To read the statute to need only one conviction within the ten-year period in order to include one or more convictions outside the period is absurd. If the statute were construed to trigger inclusion of all prior convictions when only one comes within the ten-year period, there would be little, if any, reason for the "within ten years" language. Further, accepting the State's argument would result in a much more

11

harsh enhancement regime than is allowed by the felony habitual offender provisions of NMSA 1978, Section 31-18-17 (2003). To the extent the statute can possibly be read as interpreted by both the State and Defendant, the statute is ambiguous and the doctrine of lenity demands that we construe the statute in Defendant's favor. *State v. Ogden*, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845 ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute.").

{20} The State attempts to defeat Defendant's view of the enhancement statute by discussing the "triggers" for enhancement in various other statutes, namely, NMSA 1978, Section 31-18-16(A) (1993) (firearm used in commission of a noncapital felony), and Section 31-18-17(A)-(C) (habitual offender enhancements). What is critical here is solely the interpretation of the language in Section 66-8-101(D). The attempted comparison of triggers is neither logically nor rationally helpful. We disagree with the State's unsupported interpretation of Section 66-8-101(D) and conclude that its interpretation is neither required by the text of the statute nor supported by an overall purpose of increasing penalties for recidivist offenders.

**The Plea Issues**

{21}   The plea issues involve the district court's and defense counsel's failures to advise Defendant of critical information in relation to Defendant's plea. Because we reverse Defendant's conviction and allow Defendant's plea withdrawal, we do not need to decide whether to reverse on Defendant's Points 3 and 4 relating to ineffective assistance of counsel and court error with respect to their failures to advise him of the consequences of his plea. We address these issues only to reiterate embedded law on the duties and responsibilities of defense counsel and the district court in plea circumstances.

{22}   As indicated earlier in this Opinion, the State concedes that defense counsel and the district court failed to advise Defendant of the Section 66-8-101(D) sentencing consequence of pleading guilty with admission of prior DWIs. Defendant admitted four prior DWI convictions but nothing in the plea process or in the express language of the plea agreement indicated any consequences flowing from that admission. The question is not whether error occurred but whether Defendant is entitled to relief based on the error.

{23}   The rules are set and clear. "A plea is not knowing, intelligent, and voluntary unless the defendant understands his guilty plea and its consequences." *State v. Ramirez*, 2011-NMSC-025, ¶ 9, 149 N.M. 698, 254 P.3d 649 (alteration, internal

13

quotation marks, and citation omitted). The court is not to accept a plea of guilty or no contest without first "informing the defendant of and determining that the defendant understands the . . . mandatory minimum penalty . . . and the maximum possible penalty . . ., including any possible sentence enhancements." *Id.* (alteration, internal quotation marks, and citation omitted); *see also Marquez v. Hatch*, 2009-NMSC-040, ¶ 13, 146 N.M. 556, 212 P.3d 1110 (recognizing the district court's "obligation to adequately inform the defendant of sentencing enhancements based on prior convictions"). Our Supreme Court has held "that the [district] court's failure to advise the defendant regarding the range of possible sentences associated with his plea constituted error." *Ramirez*, 2011-NMSC-025, ¶ 19. "Failure to advise a defendant of the potential penalties presumptively affects [the] defendant's substantial rights and renders the plea unknowing and involuntary." *State v. Garcia*, 1996-NMSC-013, ¶ 23, 121 N.M. 544, 915 P.2d 300.

{24}    Were we not to reverse because Defendant was improperly convicted under a crime that did not cover his conduct, the circumstances of this case would make it a good candidate for allowing Defendant to withdraw his plea. No evidence exists to indicate any understanding on Defendant's part of the sentencing consequences or to support a voluntary plea.

**The District Court's Misapprehension of Fact and Classification of Crime as Serious Violent Offense**

{25} Defendant asserts that, in sentencing him, the district court relied on the State's misrepresentation that the two people in the other car in the collision suffered great bodily injury, and based on that reliance, the court exercised its discretion in running Defendant's basic sentence and all four enhancement terms consecutively. Defendant considers the district court's error to be of constitutional due process magnitude, citing *United States v. Tucker*, 404 U.S. 443, 447 (1972), which indicates, according to Defendant, that "a defendant's constitutional right to due process is violated when the sentence is 'founded at least in part upon misinformation of constitutional magnitude.' "

{26} With respect to the same asserted mistaken belief that great bodily harm was inflicted on two people in the collision, Defendant contends that the district court's findings in regard to the application of the Earned Meritorious Deductions Act (EMDA), Section 33-2-34, were "an inaccurate representation of [the] factual basis for [his] plea[,]" insufficient because the findings "relied entirely on the elements of [the] crime[,]" and insufficient to inform Defendant how his actions "constituted recklessness in the face of knowledge that the acts were reasonably likely to result in serious harm." *State v. Loretto*, 2006-NMCA-142, ¶¶ 14-19, 140 N.M. 705, 147 P.3d 1138 (indicating that the district court should be descriptive in regard to harm and

how the defendant's acts amounted to a serious violent offense under the EMDA). Therefore, according to Defendant, the court's determination of serious violent offense was erroneous as insufficient to support a serious violent offense designation under the EMDA, requiring reversal of that determination. Under the EMDA, those convicted of a serious violent offense may earn a maximum of four days per month of good time for participating in various programs, while those convicted of a non-violent offense may earn a maximum of thirty days per month. Section 33-2-34(A).

{27} We see no reason to address these issues as important for future cases and given our reversal of Defendant's conviction as set out earlier in this Opinion.

**The Issue of Enforcing the Plea Agreement Pursuant to Defendant's Understanding of It**

{28} Defendant contends that he understood the plea agreement to impose only a maximum exposure of three years and ninety days and that the agreement must be enforced as he understood it. *See State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 ("Upon review, we construe the terms of the plea agreement according to what [the d]efendant reasonably understood when he entered the plea." (internal quotation marks and citation omitted)). He asserts that the sentence imposed must be reversed, and he asks this Court to reverse and remand with instructions to the district court to enforce the "maximum three-year and ninety-day exposure" and nothing more. Because we are reversing Defendant's Section 66-8-101 conviction

16

and sentence entered pursuant to that agreement, we see no basis on which to address this issue.

**CONCLUSION**

{29}    Defendant was wrongfully convicted under Section 66-8-101(B) and (C), statutory subsections that do not criminalize his actions. We therefore reverse Defendant's judgment and sentence based on the plea agreement. We remand with instructions to the district court to vacate the conviction and sentence imposed based on that conviction. Defendant is permitted to withdraw his plea.

{30}    **IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**J. MILES HANISEE, Judge**

17